**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF FLORIDA**

---------------------------------------- X
:
:
:
**MERY LOPEZ, on behalf of herself and all** :
**others similarly situated, and ELIZABETH** :
**BIRD, TONYA BRINSON, KATHLEEN** :
**EICHENBERG, BETTY HOFFMAN, and** :
**EVA VIOLA, individually,** :        Civil Action No.
:
            Plaintiffs,          :   **CLASS ACTION COMPLAINT**
:
       -against-                 :   **JURY TRIAL DEMANDED**
:
**DHL WORLDWIDE EXPRESS, INC., f/k/a** :
**AIRBORNE EXPRESS, INC.** :
:
            Defendant.           :
:
:
---------------------------------------- X

 

     Plaintiff Mery Lopez ("Lopez") on behalf of herself and all similarly situated persons, and Elizabeth Bird, Tonya Brinson, Kathleen Eichenberg, Betty Hoffman, and Eva Viola, individually, by their attorneys, Cohen, Milstein, Hausfeld & Toll, P.L.L.C., and Thomas A. Warren Law Offices, P.L. allege as follows:

**<u>INTRODUCTION</u>**

     1.    Plaintiff Mery Lopez brings this action on behalf of herself and a class of women similarly situated to challenge a pattern and practice of sex discrimination in promotions and pay committed against current and former female employees by Airborne Express, Inc., a wholly-owned subsidiary of Airborne, Inc. ("Airborne"), that merged with

DHL Worldwide Express, Inc.[1]  Plaintiff Lopez also brings individual charges of race discrimination, retaliation, and constructive discharge against Airborne.  Plaintiffs Elizabeth Bird and Kathleen Eichenberg bring related individual claims of sex discrimination in pay and promotions against Airborne and DHL, and Plaintiffs Tonya Brinson, Betty Hoffman, and Eva Viola bring related individual claims of sex discrimination in pay and promotions against DHL.

2.      Airborne was a shipping and delivery company in the transportation industry that handled shipments of all sizes for customers throughout the world.  It was headquartered in Seattle, Washington.  On August 15, 2003, Airborne merged with DHL Worldwide Express, Inc., a Belgium-based shipping and delivery company.  Post-merger, Airborne's existing operations were integrated into DHL's U.S.-based operations, headquartered in Plantation, Florida.

3.      Airborne's promotion and compensation policies and practices caused female employees in its Sales division as well as female employees in the State of Washington to be (a) denied promotional opportunities for which they were qualified, and (b) paid less than men performing the same work.  The employment policies and practices of Airborne have had the effect and have been undertaken with the purpose of denying promotional opportunities and equal compensation to qualified female employees because of their gender.

4.      This action is brought by Plaintiff Lopez on behalf of herself and all other similarly situated women as a class action challenging pay and promotion discrimination under Title VII of the Civil Rights Act of 1964, 42 U.S.C. §§ 2000(e) *et seq*. and the Civil Rights Act of 1991, 42 U.S.C. § 1981a.  Plaintiffs Bird, Brinson, Eichenberg, Hoffman, and Viola bring

---

[1] As used herein, the term "DHL" shall refer to and include DHL Worldwide Express, Inc., DPWN Holdings (USA), Inc., DHL Express (USA), Inc., DHL Global Customer Solutions (USA), Inc., DHL Regional Services, Inc., and DHL Information Services (Americas) USA, Inc.

this action on their own behalf challenging pay and promotion discrimination under Title VII of the Civil Rights Act of 1964, 42 U.S.C. §§ 2000(e) *et seq*. and the Civil Rights Act of 1991, 42 U.S.C. Section 1981a.

### JURISDICTION, VENUE AND EXHAUSTION OF REMEDIES

5.      Plaintiff Lopez's class claims arise under Title VII of the Civil Rights Act of 1964, 42 U.S.C. §§ 2000(e), *et seq*. and the Civil Rights Act of 1991, 42 U.S.C. § 1981a.  This Court has jurisdiction over the class claims pursuant to 42 U.S.C. § 2000e-5(f), 28 U.S.C. §§1331 and 1343(a)(4), and supplemental jurisdiction over Plaintiffs Bird, Brinson, Eichenberg, Hoffman, and Viola's individual claims.

6.      Venue is proper in this district pursuant to 28 U.S.C. § 1391(b) & (c) and 42 U.S.C. § 2000e-5(f)(3).  The claims of named Plaintiff Mery Lopez arose in the state of Florida, and a substantial part of the unlawful acts set forth below occurred within the State of Florida. Prior to the merger, Airborne's Sales division operated offices in several major cities in Florida, as well as minor cities, including Tallahassee, where Plaintiff Lopez worked.  DHL's headquarters were formerly located in Plantation, Florida.

7.      Plaintiffs have exhausted administrative remedies pursuant to 42 U.S.C. § 2000e-5(f)(3).  Each of the Plaintiffs has filed a charge of discrimination with the Equal Employment Opportunity Commission ("EEOC").  Plaintiff Lopez's charge was filed on behalf of herself and all other similarly situated current and former female employees of Airborne.  All Plaintiffs named in the complaint have timely exhausted any administrative prerequisites to filing this action, including having received notices of their right to sue.  This Complaint is timely filed.

### PARTIES

**Class Representative Plaintiff**

8.      Plaintiff Mery Lopez is a Hispanic female resident of Miami Beach, Florida and was employed by Airborne from approximately April, 1991 to 2002, in the Sales division in Florida and most recently as Pricing Director at Airborne's headquarters in Seattle, Washington.

**Other Plaintiffs**

9.      Plaintiff Elizabeth Bird is a female resident of Plano, Texas and was employed by Airborne and DHL from approximately 1998 to approximately 2004 as a Field Services Secretary in New Jersey.

10.     Plaintiff Tonya Brinson is a female resident of Charlotte, North Carolina and was employed by DHL from approximately September 1999 until approximately December 2005 in the Sales division in Charlotte, North Carolina.

11.     Plaintiff Kathleen Eichenberg is a female resident of Thornton, Colorado and was employed by Airborne and DHL from approximately 1996 until approximately August 2004.  During her employment, Plaintiff Eichenberg was an operations agent and a Field Services Supervisor in Colorado.

12.     Plaintiff Betty Hoffman is a female resident of Gastonia, North Carolina and was employed by DHL in the Sales division in Charlotte, North Carolina from approximately March of 1992 through June of 2005.

13.     Plaintiff Eva Viola is a female resident of Benicia, California and was employed with DHL from approximately October 2001 through August 2005 as a Regional Controller and Director in San Francisco, California.

**Defendants**

14.     Defendant Airborne was a shipping and delivery company headquartered in Seattle, Washington until it merged with DHL Worldwide Express, Inc. in 2003.

15.     Defendant DHL is a shipping and delivery company headquartered in Westerville, Ohio.

## COMPANY WIDE PRACTICES CHALLENGED

16.     Airborne subjected female Sales employees and female employees in the State of Washington to a pattern or practice of sex discrimination in its promotion and compensation decisions.  These practices reflect that discrimination was the standard operating procedure - the regular, rather than the unusual practice at Airborne.

17.     **Discrimination in Promotions:**  Plaintiff Lopez challenges the following practices, and any others with similar purpose or effect, which encouraged, permitted or had the effect of discriminating against female Sales employees and female employees in state of Washington by denying them equal access to promotions:

       a.     Throughout the period covered by this action, Airborne refused to publicize jobs when they became vacant.  Nor did Airborne provide a system by which employees could apply for particular vacancies or be assured of consideration for selection.  Absent a system for announcing vacancies and for permitting applications for particular positions from interested candidates, Airborne allowed district and regional managers to notify and recruit for selection employees whom they personally favored in what has historically been known as a "tap on the shoulder" system.  Nor did Airborne provide its managers with merit-based guidance about who should be selected to fill the vacant positions.  Accordingly, Airborne has granted its managers virtually unfettered discretion to identify and select candidates using personal preferences and stereotypes, without any assurance the criteria used to make promotion selections are based on

merit.

    b.    As a consequence of these policies and practices, women working in the Sales division at Airborne were denied equal opportunity to obtain promotions into and within management jobs.

18.    **Discrimination in Compensation**:  Plaintiff Lopez challenges the following practices, and any others with similar purpose or effect, which have encouraged, permitted or had the effect of discriminating against female employees in non-union positions who worked in the Sales Division nationwide and female employees in non-union positions in the State of Washington who worked in any division by causing them to be paid less than male employees performing the same work, at the same levels, in the same area, and at the same time period.

    a.    Airborne's compensation policies offered little or no guidance on setting wage rates. Pursuant to these policies, Airborne provided its managers with broad discretion to set compensation pursuant to personal biases and stereotypes rather than merit-based criteria.

    b.    As a result, women were paid less than men performing the same work, at the same levels, in the same area, and at the same time period.

19.    Airborne entrusted its managers with broad discretion that was unguided in its exercise, affording them opportunities to apply personal preferences and biases in making promotion and compensation decisions.  Airborne knew or should have known that its promotion and compensation practices were being used with the purpose and having the effect of denying qualified women employees equal opportunities to obtain promotions and to be paid at the same levels as similarly-situated male employees.   Accordingly, the practices identified above are being challenged under the systemic disparate treatment theory of discrimination.

20.     Airborne's pay and promotion policies and practices applicable to female employees in non-union positions who worked in the Sales Division nationwide and female employees in non-union positions in the State of Washington who worked in any division adversely affected female employees in these categories.

**CLASS ACTION ALLEGATIONS**

21.     With respect to the claims arising under Title VII of the Civil Rights Act of 1964, as amended, Plaintiff Lopez brings this action pursuant to 42 U.S.C. § 2000(e), *et seq.* and seeks certification of a class pursuant to Rule 23, Fed. R. Civ. P., comprised of all women who worked at Airborne at any time from July 8, 2001 through December 31, 2003, including any of them who continued to work at DHL after December 31, 2003, in a non-union position, either exempt or non-exempt, in the State of Washington or in Sales nationwide.  Plaintiff Lopez is a member of the class she seeks to represent.

22.     Airborne's policy, pattern, or practice of discrimination in pay and promotions operated within 300 days of the first charge of discrimination and unlawfully denied promotions and equal pay to Plaintiff Lopez.

23.     This action is properly maintainable as a class action because the requirements of  Rule 23(a) and Rule 23 (b) are met.

24.     The class members are sufficiently numerous to make joinder of all members impracticable.  Upon information and belief, approximately 1,138 former Airborne employees would qualify as members of the proposed class.

25.     The claims alleged on behalf of Plaintiff Lopez raise questions of law or fact common to the class.  These common questions include, but are not limited to:

    a.     whether Airborne's common operating practices and procedures
           discriminated against its female employees;

b.      whether Airborne acted  intentionally to deny equal opportunities to

female employees to obtain promotions into and within management and

to compensate female employees less than similarly situated male

employees in violation of Title VII;

c.      whether Airborne invested its managers with excessive discretion  in

making promotion and compensation decisions;

d.      whether the class may obtain an award of damages.

26.     The claims of the class representative are typical of the class she seeks to

represent.

27.     The class representative and counsel will adequately and fairly protect the

interest of the class.

28.     The class action is properly maintainable pursuant to Rule 23(b)(3) because the

questions of law and fact common to members of the class predominate over questions

affecting only individual members and a class action is superior to other available methods for

the fair and efficient resolution of this controversy.

## ALLEGATIONS OF CLASS REPRESENTATIVE NAMED PLAINTIFF
## Mery Lopez

29.     Mery Lopez worked for Airborne from approximately April 1991 to

approximately February 2002.  She began her employment with Airborne as a Customer

Service Representative in Tampa, Florida.  In approximately April 1992, she transferred to the

Orlando, Florida office as a Customer Service Representative.  Her next position was a

Telephone Sales Representative in 1993.  At the end of 1994, Lopez graduated college with a

Bachelor's Degree and transferred to Jacksonville, Florida as Airborne's North Florida Sales

Representative.  Her territory included Gainesville, Tallahassee, St. Augustine and

Jacksonville, Florida, and southern Georgia.  In 1996, Lopez's title was changed to Senior Sales Representative because of her outstanding sales numbers.  In July 2000, Lopez was given the District Sales Manager position, which put her in charge of a small district in Miami, Florida. In September of 2001, Lopez was promoted to Director of Pricing, a position which required her to relocate to Seattle, Washington, where Airborne's headquarters was located.  In addition to her duties as Director of Pricing, Lopez also assisted the General Counsel in Customer Contracts.

30.     Around the same time Lopez transferred to Jacksonville, Florida, she spoke to executives at Airborne to inform them she planned to enter law school at night and hoped to utilize her forthcoming law degree to further her career at Airborne.

31.     In 1997, Lopez applied for a promotion to Director of International Express. This position was not posted on a formal job posting system; Lopez instead heard of it because her District Sales Manager, Debbie Mahaney, chose to inform her of the opening.  Lopez was well-qualified for the position because she was currently working in domestic/international sales, and had an operations background from her previous five years working for Airborne. Lopez never received a response to her application.  The position was given to an equally or less-qualified male.

32.      In December of 1999, just after graduating from law school, Lopez applied for the Director of Marketing position, a management position.  Lopez was made aware of the position via an email from her supervisors; it was not posted.  The requirements for the position were that the applicants have a four year degree and three to four years' sales experience. Lopez met these requirements.  The position, however, was given to an equally or less-qualified male, Albert Burba.

33.     Upon learning the position had been filled, Lopez contacted Jerry Hempsted, Vice President of National Accounts, and Mike Nunn, Vice President of Sales.  She told them via email of her dissatisfaction with the promotion process, and that she felt women and minorities were not made aware of opportunities for promotion, which she attributed to the way Airborne advertised openings.  It was left up to a manager's discretion which employees to inform of openings.  Lopez also told Hempstead and Nunn that when women or minorities were notified of vacancies, and applied for those vacancies, they did not receive interviews. Hempstead and Nunn told her to "hang in there" and to "be patient."

34.     In May 2000, Lopez received a phone call from Nunn and Jimmy Baker, Regional Sales Manager, about a newly created position called National Account Manager. She interviewed for the position via phone and was offered the position.  When she accepted the next day, Baker rescinded the offer and told her they were "rethinking the position."

35.     In July 2000, Airborne created a small district in Miami called the South Miami District, and Lopez applied for and was given the District Sales Manager position for that district.  In this position, Lopez managed one Sales Representative.  In this position, Lopez grew the market and continued to inform her superiors of her desire to move up in the company.

36.     While at Airborne's National Conference in March of 2001, Lopez heard that a new Director of Pricing position would be opening.  Upon learning this, Lopez went directly to Airborne's Chief Executive Officer, Carl Donaway, to express her interest in the position.  She also informed Donaway that if she were allowed to have the position, she would also be able to assist Airborne's General Counsel, Dave Anderson, with customer contracts.  Lopez made this suggestion because it was well known throughout the company that there was a backlog in

customer contracts, and thought that with her law degree, she could provide assistance.
Donaway told Lopez this was a good idea, and suggested Lopez follow up with Jerry Cameron,
the Vice President of Pricing who was currently in charge of customer contracts, and Richard
Corrado, the Vice President of Marketing.  She did so, by email, and copied her Regional Sales
Manager, Rick Stark.

37.     Lopez subsequently received an email notification via Stark informing her of the
opening for Director of Pricing/Customer Contracts.  The minimum qualifications for the
position required formal legal training or three years experience as a paralegal. Lopez applied
and interviewed with Cameron, Corrado, Nunn and Stark, among others.  During the interview
process, Cameron informed Lopez that sixty to sixty-five percent of her time would be spent in
pricing, and the rest of her time would be spent in customer contracts, although initially she was
to devote more time to customer contracts because there was a backlog in that department.  In
September 2001, Lopez was promoted to Director of Pricing/Customer Contracts and moved to
Seattle.

38.     Following her promotion, two female pricing coordinators came to Lopez and
told her that Airborne was not promoting females. They said there were many positions that
men were interviewing for and they felt they and other women were being passed over.  Lopez
had not even been informed that there were positions open in her department.  Two other
Pricing Directors, Doug Thomas and Craig Funcke, who Lopez felt were being paid more than
she to perform essentially the same job, conducted interviews on their own for two Specialist
positions, without consulting with Lopez.  They hired two less qualified males for Specialist
positions.  Although the two men, James Matthew and Joel Houston, both had master's
degrees, there were female employees available with more years of experience, and a better

work history.  When Lopez spoke with Thomas and Funcke about this, they dismissed her

concerns and told her that the two men were the most qualified of the applicants.

39.     During a meeting in February 2002 with Corrado, Lopez told him she thought

Thomas and Funcke were treating her unfairly because of her gender, and she also passed on

the complaints from women who felt they were passed over for the Pricing Specialist job

because of their gender.  Rather than addressing her concerns, Corrado simply told her she

needed to spend more time on the pricing aspect of her job and less time dealing with customer

contracts.

40.     After this meeting, Lopez sent Corrado an email requesting a meeting with

Human Resources in order to get the issues she had complained about resolved.  In her email,

she stated that if the issues could not be resolved, she would submit a resignation letter at the

end of the week.  The next day, Corrado told her that Human Resources considered her email a

resignation letter, and that she would not get a meeting with Human Resources, but should

instead pack up her office and leave.  It was not Lopez's intention to resign.  She merely

wanted Human Resources or anyone else at the company to address her concerns with Thomas

and Funcke.  However, given Corrado's statement to her, she felt she had no choice but to leave

the company.

41.     On May 3, 2002, Lopez filed a timely charge of discrimination with the Equal

Employment Opportunity Commission.

42.     Lopez received notice of her right to sue from the EEOC and timely filed this

lawsuit.

**ALLEGATIONS OF OTHER NAMED PLAINTIFFS**

**Elizabeth Bird**

43.     Elizabeth Bird began working for Airborne in approximately 1998 as a field services secretary.  She left Airborne/DHL in approximately November 2004.

44.     Throughout her employment with Airborne, and after the merger with DHL, Bird made her supervisors aware of her desire to be promoted.  She obtained a college degree in 2003 in order to make herself more qualified for promotions.

45.     On information and belief, Bird was passed over for higher paying jobs for which she was qualified for and interested in favor of equally or less qualified males.

46.     Bird filed a timely charge of discrimination with the EEOC.

47.     Bird received notice of her right-to-sue from the EEOC and timely filed this lawsuit.

**Tonya Brinson**

48.     Tonya Brinson was employed by DHL from approximately September 1999 through December 2005 as a Sales Administrator in Charlotte, North Carolina.

49.     In  October 2005 there was an opening in her office for a Sales Representative position.  Brinson expressed her interest in this promotion, and interviewed for the position. She did not receive the position; instead two equally or less-qualified males were selected as Sales Representatives.  Neither had any industry experience, while Brinson had six years' experience.

50.     Brinson filed a timely charge of discrimination with the Equal Employment Opportunity Commission.

51.     Brinson received notice of her right to sue from the EEOC and timely filed this lawsuit.

**Kathleen Eichenberg**

52.     Kathleen Eichenberg was employed by Airborne from approximately 1996 to approximately August 2004 in Colorado.  Eichenberg began her employment as an Operations Agent and was a Field Services Supervisor when she was terminated because of her gender.

53.     On information and belief, Eichenberg was passed over for higher paying jobs for which she was qualified and interested in favor of equally or less-qualified males.

54.     In late summer 2004, at least three other female employees and Eichenberg were terminated in the Colorado area where Eichenberg worked.  A male replaced Eichenberg.  At the time of her termination, there were other job opportunities at the Company that came available but Eichenberg was not offered these positions.

55.     Eichenberg filed a timely charge of discrimination with the Equal Employment Opportunity Commission.

56.     Eichenberg received notice of her right to sue from the EEOC and timely filed this lawsuit.

**Betty Hoffman**

57.     Betty Hoffman worked for DHL from approximately March of 1992 through approximately June 2005.  She began her employment as an Administrative Assistant in the Sales department in North Carolina.  In 1999, she moved to the Account Representative position, also in the Sales division.  This was the position she held when she left the company.

58.     In the Fall of 2004, Hoffman expressed her interest in a promotion to an Account Executive position.  At about the same time, a male colleague of hers also expressed his interest to a promotion to this position.  Despite the fact that Hoffman had more experience and was better qualified for the job than he was, he received the promotion to Account Executive in January 2005, while Hoffman did not.

-14-

59.    Despite this promotion denial, Hoffman continued to express her interest in promotions.  On other occasions, equally or less qualified males received promotions, but Hoffman did not.  Because of this, she left the company in June 2005.

60.    Hoffman filed a timely charge of discrimination with the Equal Employment Opportunity Commission.

61.    Hoffman received her Right to Sue notice from the EEOC and timely filed this lawsuit.

**Eva Viola**

62.    Eva Viola was employed with DHL from approximately October 2001 through approximately August 2005.  She began her employment as a Regional Controller in San Francisco, California, and was a Director when she left the company.

63.     In approximately 2002, Viola's job responsibilities increased and she began managing the sales and logistics groups in the United States, Canada, and ten Latin American countries.  She expressed interest in a promotion to a higher job grade Regional Controller position, which was a director-level job.  She was told that her division was being reorganized and she would need to wait until 2003.  At the time, she was performing the work of a Director, but did not receive the pay, title, or benefits of the position.  The Director positions were predominantly held by males.

64.    In 2003, her job responsibilities again increased after the merger with Airborne.  After again requesting promotion to a director-level position, she was again told her division was reorganizing and she would need to wait until 2005.

65.    In February 2005, she again sought promotion to a director-level position and was again denied.  In April 2005, both she and a male Senior Financial Analyst were given a

notice of relocation, informing them they would need to move to Florida.  Viola did not wish to

relocate to Florida.  In May of 2005, after informing management that she did not want to

relocate, Viola was given a promotion to a Director-level position, with the condition that she

relocate.  Because she refused to relocate, she was terminated.  Her male colleague, however,

was not forced to relocate in order to keep his job.

66.     A male was hired to replace Viola.

67.     On information and belief, Viola was paid less than her male counterparts.

68.     Viola filed a timely charge of discrimination with the Equal Employment

Opportunity Commission.

69.     Viola received her Right to Sue notice from the EEOC and timely filed this

lawsuit.

## CLASSWIDE COUNT I
### Violation of Title VII - Disparate Treatment

70.     Plaintiffs repeat and reallege the allegations contained in paragraphs 1 through 42.

71.     Airborne has intentionally discriminated against Plaintiff Lopez and the members

of the proposed class by maintaining a system for making promotion and compensation decisions

that was excessively subjective and through which Airborne permitted or encouraged managers

to deny female employees equal access to promotion opportunities and the same compensation

paid to similarly situated male employees.

72.     Airborne's discriminatory practices described above have denied female

employees promotional opportunities and compensation to which they were entitled, which has

resulted in the loss of past and future wages and other job benefits to Plaintiff Lopez and

members of the class.

73.     The foregoing conduct described above violates Title VII of the Civil Rights Act

of 1964, as amended, 42 U.S.C. § 2000(e), *et. seq.* and constitutes a continuing violation.

74.     The foregoing conduct described above caused the Plaintiff Lopez and members of the proposed class emotional harm and other forms of harm proximately caused by Airborne's discriminatory conduct.

75.     The foregoing conduct described above was undertaken with malice or reckless disregard of the rights protected by Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000(e), *et. seq.*

76.     Plaintiff Lopez requests relief as provided in the Prayer for Relief below.

**COUNT II ON BEHALF OF PLAINTIFF MERY LOPEZ**
**Gender and Race Discrimination, Retaliation,**
**and Constructive Discharge in Violation of Title VII**

77.     Plaintiff Lopez repeats and realleges the allegations contained in paragraphs 1-42 and 70-76.

78.     The foregoing conduct described above was undertaken with malice or reckless disregard of the rights protected by Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000(e), *et. seq.*

79.     Plaintiff Lopez requests relief as provided in the Prayer for Relief below.

**COUNT III ON BEHALF OF PLAINTIFF ELIZABETH BIRD**
**Gender Discrimination in Violation of Title VII**

80.     Plaintiff Bird repeats and realleges the allegations contained in paragraphs 43-47.

81.     The foregoing conduct described above was undertaken with malice or reckless disregard of the rights protected by Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000(e), *et. seq.*

82.     Plaintiff Bird requests relief as provided in the Prayer for Relief below.

**COUNT IV ON BEHALF OF PLAINTIFF TONYA BRINSON**

**<ins>Gender Discrimination in Violation of Title VII</ins>**

83.     Plaintiff Brinson repeats and realleges the allegations contained in paragraphs 48-51.

84.     The foregoing conduct described above was undertaken with malice or reckless disregard of the rights protected by Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000(e), *et. seq*.

85.     Plaintiff Brinson requests relief as provided in the Prayer for Relief below.

**COUNT V ON BEHALF OF PLAINTIFF KATHLEEN EICHENBERG**
**<ins>Gender Discrimination in Violation of Title VII</ins>**

86.     Plaintiff Eichenberg repeats and realleges the allegations contained in paragraphs 52-56.

87.     The foregoing conduct described above was undertaken with malice or reckless disregard of the rights protected by Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000(e), *et. seq*.

88.     Plaintiff Eichenberg requests relief as provided in the Prayer for Relief below.

**COUNT VI ON BEHALF OF PLAINTIFF BETTY HOFFMAN**
**<ins>Gender Discrimination in Violation of Title VII</ins>**

89.     Plaintiff Hoffman repeats and realleges the allegations contained in paragraphs 57-61.

90.     The foregoing conduct described above was undertaken with malice or reckless disregard of the rights protected by Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000(e), *et. seq*.

91.     Plaintiff Hoffman requests relief as provided in the Prayer for Relief below.

**COUNT VII ON BEHALF OF PLAINTIFF EVA VIOLA**
**<ins>Gender Discrimination in Violation of Title VII</ins>**

92.     Plaintiff Viola repeats and realleges the allegations contained in paragraphs 62-69.

93.     The foregoing conduct described above was undertaken with malice or reckless disregard of the rights protected by Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000(e), *et. seq*.

94.     Plaintiff Viola requests relief as provided in the Prayer for Relief below.

## PRAYER FOR RELIEF

**WHEREFORE** Plaintiffs respectfully request this Court

**As to the Class Claims:**

A.     Declare that the practices described in this complaint existed at Airborne and that they are unlawful;

B.     Grant certification of this action as a class action on behalf of the proposed Plaintiff class and designation of Plaintiff Lopez as representative of the class and her counsel of record as Class Counsel;

C.     Award compensatory and punitive damages appropriate to the proof at trial;

D.     Award reasonable attorneys' fees and costs, including expert fees, pursuant to 42 U.S.C. § 2000e; and

E.     Order such other and further relief as the Court deems just and proper.

**As to Plaintiffs Lopez, Bird, Brinson, Eichenberg, Hoffman, and Viola's Individual Claims:**

F.     Award monetary damages and any other relief sufficient to make Plaintiffs Lopez, Bird, Brinson, Eichenberg, Hoffman, and Viola whole;

G.     Award reasonable attorneys' fees and costs, including expert fees, pursuant to 42 U.S.C. § 2000e; and

H.     Order such other and further relief as the Court deems just and proper.

## JURY TRIAL DEMAND

The Plaintiffs hereby demand a jury trial.

Dated: Tallahassee, Florida
       April ___, 2009

Respectfully submitted,

**THOMAS A. WARREN LAW OFFICES, P.L.**

_____

**THOMAS A. WARREN**—Florida Bar #0176730
Thomas A. Warren Law Offices, P.L.
2032-D Thomasville Road
Tallahassee, FL 32308
Telephone:  (850) 385-1551
Facsimile:  (850) 385-6008
tw@nettally.com

**JOSEPH M. SELLERS**
Cohen Milstein Sellers and Toll PLLC
1100 New York Avenue, N.W.
West Tower, Suite 500
Washington, D.C.  20005
Telephone:  (202) 408-4600
Facsimile:  (202) 408-4699
jsellers@cohenmilstein.com

***Counsel for Plaintiffs***